UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LIFESCIENCE TECHNOLOGIES, LLC     )
          )
     Plaintiff,         )
v.                        )     Case No. 4:21-cv-01279-SEP
          )
MERCY HEALTH, et al,        )
          )
     Defendants.      )

## MEMORANDUM AND ORDER

Before the Court is Defendant Myia Labs, Inc.'s Motion to Transfer Venue, Doc. [524]. For the reasons set forth below, the motion is granted.

### BACKGROUND

This trade secret misappropriation case arises out of a dispute between LST and Defendants Mercy and Myia. LST is a software development company that develops and delivers virtual patient care solutions. Doc. [1] ¶ 19. One of LST's virtual care platforms is m.Care, which connects hospital-based teams with home-based patients. *Id*. ¶¶ 19, 22. In 2015, Mercy asked LST to further develop its m.Care platform for use in Mercy's patient population. *Id*. ¶ 30. Sometime in 2018, while Mercy was still using m.Care, Mercy announced that it was bringing Defendant Myia aboard to co-develop a virtual patient care platform for Mercy's use. *Id*. ¶ 57. LST alleges that Mercy improperly allowed Myia employees to access the m.Care platform in order to examine, reverse engineer, and use LST's trade secrets and intellectual property to develop Myia's software platform. *Id*. ¶¶ 60-77, 81. When Myia's software was functionally capable of replacing the m.Care software, Mercy stopped using m.Care and began using Myia's virtual care platform instead. *Id*. ¶ 86. LST sued both Mercy and Myia for trade secret misappropriation, computer tampering, unfair competition, and civil conspiracy. *See* Doc. [1]. Myia countersued for trade secret misappropriation, unfair competition, and abuse of process. *See* Doc. [169].

On January 16, 2026, Myia filed a petition for bankruptcy protection under Chapter 7, Title 11 of the United States Code. *See* Doc. [523]. The bankruptcy case is currently pending in the Northern District of California, where Myia is incorporated. *See In re Myia Labs, Inc*., Case No. 26-30038 (Bankr. N.D. Cal.). As a result of the bankruptcy, all proceedings against Myia

1

are stayed pursuant to 11 U.S.C. § 362(a).  On January 31, 2026, the trustee of Defendant Myia's bankruptcy estate filed the instant motion, asking the Court to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1412.  Doc. [524].  The trustee argues that it would be inefficient and uneconomical for him to litigate the instant action in the Eastern District of Missouri while simultaneously administering Myia's bankruptcy estate in the Northern District of California.  Doc. [525-1] at 3.  Defendant Mercy states that in order "to avoid duplicative proceedings and promote judicial economy, Mercy does not oppose the trustee's motion to transfer."  Doc. [531] at 1.  Plaintiff LST opposes the transfer.  *See* Doc. [530].

### LEGAL STANDARD

Section 1412 of Chapter 28 of the United States Code permits transfer of a civil proceeding that is "related to" a pending bankruptcy case to the district where the bankruptcy action is pending when such transfer is "in the interest of justice or for the convenience of the parties."  *See Longquist Field Servs., LLC v. Dominion Proppants, LLC*, 2020 WL 5230887, at *1 (E.D. Mo. Sept. 2, 2020).  Granting a motion to transfer venue under 28 U.S.C. § 1412 is within the Court's discretion.  *In re Vital Link Lodi, Inc.*, 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999).  The party seeking transfer has the burden to show by a preponderance of the evidence that transfer is warranted.  *Quick v. Viziqor Sols, Inc.*, 2007 WL 494924, at *3 (E.D. Mo. Feb. 12, 2007).

When a civil case is related to a bankruptcy proceeding, there is a "strong presumption in favor of placing venue in the district court where the bankruptcy case is pending."  *Krakowski v. Am. Airlines, Inc.*, 927 F.Supp.2d 769, 774 (E.D. Mo. 2013) (quoting *Quick*, 2007 WL 494924, *3); *see also In re Vital Link Lodi, Inc.*, 240 B.R. at 19 ("The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction . . . ."); *Bank of Am., NT&SA v. Nickele*, 1998 WL 181827, at *5 (E.D. Pa. Apr. 16, 1998) ("A presumption has developed that civil proceedings should be tried in the "home" court, namely, the court where the bankruptcy case itself is pending.").

When assessing whether transfer is in the interest of justice, courts consider "the economics of estate administration; presumption in favor of the venue of the bankruptcy proceeding; judicial efficiency; ability of the parties to receive a fair trial; a state's interest in having local controversies decided within its borders by those familiar with its laws; enforceability of any judgment rendered; and plaintiff's original choice of forum."  *Longquist*,

2

2020 WL 5230887, at *2 (citing *In re Bruno's, Inc.*, 227 B.R. 321, 324-25 (Bankr. N.D. Ala. 1998)). "This Court is particularly aware that 'litigation of related claims in the same tribunal is strongly favored' because it promotes the efficient operation of the courts." *Id.* (quoting *May Dep't Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1166 (E.D. Mo. 1995)). Some courts have found that the "economic and efficient administration of the bankruptcy estate" is the most important factor. *In re Bruno's*, 227 B.R. at 324; *see also Longquist*, 2020 WL 5230887, at *2.

**DISCUSSION**

The questions before the Court, then, are (I) whether this action is "related to" the bankruptcy proceeding, and if so, (II) whether transfer is appropriate in the interest of either justice or the convenience of the parties. *Longquist*, 2020 WL 5230887, at *1.

**I.      This case is "related to" the bankruptcy action.**

The test for determining whether a civil proceeding is related to a bankruptcy action "is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987) (emphasis in original). "Such a test 'implements a fairly broad interpretation of the scope of a bankruptcy court's 'related to' jurisdiction' and even a proceeding 'which portends a mere contingent or tangential effect on a debtor's estate' meets the broad jurisdictional test adopted by the Eighth Circuit." *Quick*, 2007 WL 494924, at *2 (quoting *Abramowitz v. Palmer*, 999 F.2d. 1274, 1277 (8th Cir.1993)).

Myia's trustee argues that this action is clearly related to the bankruptcy proceeding. *See* Doc.[525] at 4. LST does not state a position, but "a party cannot concede related to jurisdiction by agreeing that the conceivable effect test has been met," so the Court must make a determination even if it interprets LST's silence as concession. *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1019-20 (8th Cir. 2009). Fortunately, it is not a close call. This case is plainly "related to" the bankruptcy action, as its outcome will determine the worth of the estate's only substantial assets—its intellectual property and any damages associated with Myia's counterclaims.[1] The successful resolution of Myia's counterclaim and disposition of LST's complaint in Myia's favor would have not only a "conceivable effect" on its estate; it could

---

[1] Myia's bankruptcy filing indicates that aside from the value of its intellectual property and counterclaims against LST, Myia has only $41.41 in assets. *See* Doc. [525-2] at 8.

3

provide it with sufficient proceeds to pay off all its debts.[2]  The Court concludes, then, that the "conceivable effect" test is satisfied and "related to" jurisdiction exists.

**II.      The interest of justice favors transfer to the Northern District of California.**

    **A.  The economic and efficient administration of the bankruptcy estate favors transfer to the "home court" of the bankruptcy proceeding.**

As noted above, some courts consider this factor most salient to an analysis of transfer under § 1412.  *See In re Bruno's*, 227 B.R. at 323.  Here, it weighs strongly in favor of transfer. Under 28 U.S.C. § 1334(e)(1), the court where a bankruptcy case is pending has exclusive jurisdiction over the estate's property.  The purpose of the statute is to centralize control of estate assets, thus facilitating the estate's efficient administration in the bankruptcy forum.  *See Porretto v. City of Galveston Park Bd of Trs*, 113 F.4th 469, 484 (5th Cir. 2024).  The same assets that are now subject to the jurisdiction of the bankruptcy court in the Northern District of California are central to this litigation, the outcome of which will determine their value.  "The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of the cases is a paramount consideration in the bankruptcy process."  *In re Vital Link Lodi, Inc.*, 240 B.R. at 19.

According to the trustee, litigating the value of Myia's assets in Missouri, separate from the core bankruptcy proceeding, would be inefficient and risk fragmented, duplicative proceedings.  *See* Doc. [534] at 3.  The trustee further asserts that transferring this action to the bankruptcy forum better protects creditor interests by allowing the court charged with ensuring efficient administration of the estate to oversee the litigation.  *Id*.  The Court agrees.  Transfer would permit a single district to oversee the intertwined matters, promoting economical and efficient administration as well as decisional consistency, while minimizing the risk that the instant action unnecessarily stalls or otherwise interferes with the bankruptcy proceeding.

LST argues that no efficiency would be achieved by transfer.  *See* Doc. [530] at 6.  It notes that the trustee has not yet initiated an independent adversarial proceeding pursuing claims duplicative of Myia's counterclaims against LST, but rather has asked to transfer the entire matter to California.  *See* Doc. [530] at 6.  The Court does not find that persuasive under the

---

[2] The bankruptcy petition values Myia's counterclaims against LST at $63,000,000, and the estate's outstanding priority and unsecured claims at $3,971,996.65.  *See* Doc. [525-2] at 11, 17.

circumstances.  There would be no reason for the trustee to bring such an action if it can make a strong case (as it has) for getting this litigation transferred to its home jurisdiction.  If transfer is denied, the trustee still could pursue an independent action, raising all the difficulties involved with pursuing separate proceedings in two different forums.

LST's own actions and statements demonstrate how intertwined the claims by and against LST are with Myia's estate administration.  In February 2026, LST participated in Myia's Meeting of Creditors hearing, questioning Myia's representative at length about the value of its claims against LST.  *See* Doc. [534] at 4.  And LST conceded in its briefing on this motion that the "claims and counterclaims of LST, Mercy and Myia before this court certainly are 'intertwined' with each other and should be heard together."  Doc. [530] at 5.

Considering the above, and mindful of the "strong presumption in favor of placing venue in the district court where the bankruptcy case is pending," the Court concludes that the economic and efficient administration of the bankruptcy estate would be advanced by resolving all of the claims in this matter in the bankruptcy forum.  *Krakowski,* 927 F.Supp.2d at 774.  This factor weighs heavily in favor of transfer.

## B.  Judicial efficiency favors transfer.

As noted above, LST's claims against Mercy are closely intertwined with its claims against Myia, which are now automatically stayed by operation of 11 U.S.C. § 362(a).  The Court has before it numerous dispositive and *Daubert* motions that contain overlapping issues and arguments that pervade all parties' claims and defenses.  It would be extraordinarily difficult—arguably impossible—to disentangle claims and resolve any of those matters in a way that does not impact Myia's estate.  The Court sees no practical way for the case to proceed in both this district and the bankruptcy venue without causing notable inefficiencies.  There would likely be significant duplication of efforts for the courts and the parties alike, including the potential for two separate trials, both involving the same issues, witnesses, and experts.  There is no doubt that all parties' claims and defenses in this case are inextricably intertwined and should be litigated together.  Transfer would avoid duplicative proceedings, potentially inconsistent factual records, redundancy of effort, and the risk of inconsistent rulings.

LST argues that the case should remain in the Eastern District of Missouri due to the "extensive time, effort and expense [that has] already been invested into litigating this case by all parties involved, as well as by the Court."  Doc. [530] at 8.  The Court is sympathetic to that

5

argument and finds the timing of Myia's bankruptcy more than lamentable. But it will not succumb to the sunk-cost fallacy. The Court's consideration of judicial economy at this juncture has to be forward-looking, focused on the efficiency of future oversight, rather than resources already spent.

LST further argues that transfer would lead to delays that would not be experienced if the action remained in this district. *See* Doc. [530] at 6-7. It asserts that transfer could result in delayed resolution of the parties' pending motions for summary judgment, as well as vacating or extending the trial date. *Id*. While that may well be true, such delays may be equally likely if the action remains here. Even if the case is not transferred, it would nonetheless be significantly affected by the automatic stay. Five of the seven remaining claims in this case are brought jointly against both Mercy and Myia, with material overlap in factual issues and defenses. Myia is a necessary party to this lawsuit, and the Court does not see how the case could fairly proceed until Myia is available to fully participate. And so, if the case were to remain in this district, the Court would almost certainly have to stay the entire action.[3]

LST also argues that transfer would not result in added efficiencies because the trustee is not seeking transfer to the "same court [where] the bankruptcy case is," but instead seeks transfer to "another district court, as opposed to the bankruptcy court [where] the estate will be administered," meaning that the case would still be heard by two different judges. Doc. [530] at 5. The Court presumes the argument rests on a misunderstanding of how transfer under § 1412 operates. The statute explicitly allows transfer only to "a district court for another district," not directly to a bankruptcy court. Once transferred, the receiving district court may refer the action to the bankruptcy court pursuant to 28 U.S.C. § 157(c). *See, e.g., Quick*, 2007 WL 494924, *5 (transferring case from the Eastern District of Missouri to the District of Delaware "for reference to the Delaware Bankruptcy Court"); *Lonquist*, 2020 WL 5230887, at *3 (E.D. Mo. Sept. 2, 2020) (same, but to Louisiana courts).

In light of all the above, considerations of judicial efficiency weigh strongly in favor of transfer.

---

[3] Mercy has filed a motion seeking to stay the action in its entirety for as long as the automatic stay of proceedings against Myia remains in place. *See* Doc. [532].

### C.  The ability of the parties to receive a fair trial is a neutral factor.

Myia's trustee argues that this factor is neutral, as there is no basis for asserting that a fair trial could not be obtained in the Northern District of California.  *See* Doc. [525] at 7.  LST seems largely to agree:  "LST generally believes that, if this action were to be heard before the Northern District of California Courts, that the jurists operating those courts would likely evaluate the relative positions and claims of the parties impartially and without favoritism."  Doc. [530] at 10.  But LST nonetheless argues that the factor weighs against transfer, because the trustee has "insinuate[d] that a motivating factor for requesting the transfer is a belief that the California courts are likely to provide more favorable consideration to Myia's position than would be afforded if they were heard before a fully impartial court."  *Id*.  LST bases this argument on a statement in the trustee's brief noting the bankruptcy court is "charged with maximizing estate value."  *Id*. (quoting Doc. [525] at 6).  While LST "assumes the California courts would not unfairly tip the scales of justice towards Myia," it nonetheless professes concern that the trustee, who is "the party most familiar with the actions and behavior" of California courts, believes they might be unfairly predisposed towards Myia.  *Id*.  According to LST, the trustee's apparent belief that the California court would treat Myia more favorably than LST "should be afforded some weight," and it tips the "fair trial" factor against transfer.  *Id*.

The trustee explains in response that it only meant to point out that the bankruptcy court is charged with efficient administration of the estate and did not mean to imply that the California court would be partial to any party.  *See* Doc. [534] at 8.  The Court finds this explanation plausible, and frankly, finds it implausible that the trustee intended to insinuate that the California courts would not be impartial.  And even if the trustee did harbor such a belief, the Court itself would still have no reason to believe that the California courts cannot fairly adjudicate the parties' claims.  This factor is neutral, weighing neither for nor against transfer.

### D.  Missouri's interest in having the case handled locally is also neutral.

The claims at issue here are a mix of Missouri state-law claims and federal trade secret law.  Like most state trade secret statutes, the Missouri Uniform Trade Secrets Act closely mirrors the federal Defend Trade Secrets Act.  *See MWG Enters, LLC v. ETS Wound Care, LLC*, 586 F.Supp.3d 946, 965 (E.D. Mo. 2022).  California courts are well versed in trade secret

claims,[4] and there should be no impediment to their evaluation of the Missouri claim, as the elements are duplicative of the federal claim.  *Id*.

The other state-law claims, breach of contract and abuse of process, are also similar to their California counterparts.  *Compare Newell Rubbermaid, Inc. v. Efficient Sols., Inc.,* 252 S.W.3d 164, 176 (Mo. Ct. App. 2007) ("To succeed in a breach of contract claim, plaintiff must prove that: (1) a contract existed between plaintiff and defendant; (2) plaintiff had certain rights and defendant had certain obligations or duties under the contract; (3) defendant breached the contract; and (4) plaintiff suffered damages therefrom.") *and Schlafly v. Cori*, 647 S.W.3d 570, 573-74 (Mo. banc 2022) ("To establish an abuse of process, one must show '(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.'") *with D'Arrigo Bros. of California v. United Farmworkers of Am*., 224 Cal. App. 4th 790, 800 (2014) ("Establishing [a breach of contract claim] requires a showing of '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'") *and Brown v. Kennard*, 94 Cal. App. 4th 40, 44 (2001) ("To succeed in an action for abuse of process, a litigant must establish two elements: that the defendant (1) contemplated an ulterior motive in using the process; and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings.").

Federal courts commonly apply laws of other states, and the claims here do not appear to raise unique issues of Missouri law that the Northern District of California would be unable to address.  The Court finds this factor is neutral here, weighing neither for nor against transfer.

### E.  The enforceability of any judgment rendered is a neutral factor.

Myia argues that this factor is neutral because nothing indicates there would be any difficulty regarding enforcing a judgment rendered by the Northern District of California.  *See* Doc. [525] at 7.  LST argues that this factor weighs against transfer, because if it were to obtain judgment against the Mercy Defendants in a California court, it would have to domesticate the judgment in Missouri federal court to effectuate collection on the judgment.  *See* Doc. [530] at

---

[4] Indeed, a California court could well be better suited to analyze such a claim than a Missouri court, as California federal courts adjudicate trade secrets cases at a much higher volume than in Missouri.  For example, in 2025, there were 51 such cases filed in the Eastern District of Missouri, compared with 648 cases filed during the same period in the Northern District of California.  *See* Doc. [534-2].

But LST does not point to any reason to believe the domestication process would be difficult or expensive.  Registration of a judgment in federal court with respect to judgments of other federal courts is not typically difficult or expensive; it is "a rapid procedure that does not require the intervention of a judge." *Kirshner v. Smith*, 2024 WL 3640619, at *2 n.4 (D. Vt. July 10, 2024), *report and recommendation adopted*, 2024 WL 3638901 (D. Vt. Aug. 2, 2024).  In any event, the minor inconvenience of domesticating a judgment does not render that judgment unenforceable.  Having seen no evidence that a judgment rendered in California would be unenforceable, the Court concludes that this factor is neutral.

### F.  The Plaintiff's choice of venue weighs against transfer.

Plaintiff lastly argues that its original choice of forum should receive deference.  *See* Doc. [530] at 12.  The Court is not unsympathetic to its position.  *See Longquist*, 2020 WL 5230887, at *2 ("Plaintiff does note, and the Court recognizes, that its choice of forum should be granted some deference.").  Presumably, this factor always weighs against transfer, as it would be the rare Plaintiff that readily accedes to transferring its lawsuit to a forum other than the one it chose.  As the trustee points out, this is not a unique situation, as litigation is always paused by bankruptcy and often consolidates in the bankruptcy venue.  *See* Doc. [534] at 10.  Where the balance of interests otherwise favors transfer, a Plaintiff's choice of venue does not typically control.  *See Longquist*, 2020 WL 5230887, at *2 (quoting *Krakowski*, 927 F.Supp.2d at 774) (When the balance of interests favors transfer, coupled with the "strong presumption in favor of placing venue in the same district court as the bankruptcy proceeding," transfer is appropriate, Plaintiff's choice of forum notwithstanding.).  Thus, although this factor weighs against transfer, the Court is convinced that transfer is nonetheless in the interests of justice in this action.

### CONCLUSION

After careful consideration of the matter, the Court finds that Myia, through its trustee, has sustained its burden of showing by a preponderance that the interests of justice warrant transfer.  This cause of action will be transferred to the "home" bankruptcy venue in the United States District Court for the Northern District of California for reference to the United States Bankruptcy Court for the Northern District of California.

In light of the above finding, the Court need not address the "convenience of parties" prong of 28 U.S.C. § 1412.  *See In re Bruno's*, 227 B.R. at 324 ("Because the criteria under

§ 1412 is phrased in the disjunctive . . . [a] case or proceeding is transferrable upon a sufficient showing of either the interest of justice *or* for the convenience of the parties.") (emphasis added).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Myia Labs, Inc.'s Motion to Transfer Venue, Doc. [524] is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause of action, in its entirety, shall be transferred to the United States District Court for the Northern District of California for reference to the United States Bankruptcy Court for the Northern District of California.

**IT IS FINALLY ORDERED** that the Clerk of Court is directed to transfer this case to the United States District Court for the Northern District of California.

Dated this 19th day of March, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE